UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>JASON S. ENGLEN,    )<br>     Defendant.   ) | CRIMINAL NO 17-10012-RGS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this Sentencing Memorandum in the above-captioned case, which is scheduled for sentencing on March 7, 2018.  For the reasons outlined in this memorandum, the Government believes that a sentence of 100 months' imprisonment, the mid-range of the advisory guidelines, is the appropriate sentence in this matter.  Additionally, the government requests that upon completion of his sentence, the defendant be placed on a period of supervised release for a period of 36 months, pay restitution in the amount of $6,346.00[1], and pay a mandatory special assessment of $400.00.

**I.    PROCEDURAL HISTORY**

On January 19, 2017, Englen was charged in a four-count Indictment with bank robbery.  On November 15, 2017, Englen pled guilty to a four-count Indictment charging him with four counts of bank robbery in violation of 18 U.S.C. § 2113(a).

---

[1] $4,225.00 to TD Bank and $2,121.00 to Salem Five Bank.

**II.   FACTS**

The facts, as stated in the Pre-Sentence Report ("PSR"), are largely uncontested.

**A. TD BANK – October 31, 2016**

On October 31, 2016, at approximately 5:11 p.m. an individual entered a branch of the TD Bank located at 880 Massachusetts Avenue in Arlington, Massachusetts.  As the individual (the "robber") entered the bank, he was observed donning a pair of black sunglasses.  The robber approached a teller and handed her a white slip of paper.  The teller recalled that written on the paper was the word "ROBERY" [sic]. The robber then stated, in substance, "I'm not kidding."  The teller handed the robber US currency from her drawer and then the robber departed the bank taking the demand note with him.  A post-robbery audit determined that the teller had given the robber $965.00 in US currency.

**B. TD BANK – November 5, 2016**

On November 5, 2016, at approximately 1:45 p.m., an individual entered a branch of the TD Bank located at 470 Main Street in Reading Massachusetts.  As the individual (the "robber") entered the bank, he was observed donning a pair of black sunglasses and walking to a counter where various deposit and withdrawal slips are located.  The robber remained at the counter for a few moments and then approached a teller's

station.  Once at the station, the robber handed the teller a white withdrawal slip.  The teller recalled that written on the slip was the word "ROBERT" [sic].  The teller also recalled that the robber stated, in substance, "This is a robbery, you're being robbed, open that drawer."

The teller took a "bundle of cash" and placed it into a currency bag.  The robber stated, in substance, "I don't want that bag, give me more $20's."  The teller then removed a stack of $20's from her drawer and handed them to the robber.  The robber took the US currency and the demand note and then exited the bank.  A post-robbery audit determined that the teller had given the robber $880.00 in US currency.

### C. SALEM FIVE BANK - November 7, 2016

On November 7, 2016, at approximately 12:53 p.m., an individual entered a branch of the Salem Five Bank located at 36 Cambridge Street in Burlington, Massachusetts.  The individual (the "robber") approached a teller and handed her a yellow slip of paper.  The teller recalled that written on the paper was the word "ROBERY" [sic].  The teller handed the robber US currency from her drawer and then the robber exited the bank.  A post-robbery audit determined that the teller had given the robber $2,121.00 in US currency.

**D. TD BANK – November 13, 2016**

On November 13, 2016, at approximately 1:00 p.m., an individual entered a branch of the TD Bank located at 79 Lynnfield Street in Peabody, Massachusetts.  The individual (the "robber") walked to a counter where various deposit and withdrawal slips are located.  The robber then approached a teller and handed her a white slip of paper.  Written on the paper was the word "ROBBERY" [sic].

The teller took a "bundle of cash" and placed the currency into a designated bag.  The robber then told the teller he did not want that currency and demanded that the teller give him $100's and $50's from her drawer.  The teller handed the robber currency and the robber stated, in substance, "That's all you need to do." The robber took the note and the currency and then exited the bank.  A post-robbery audit determined that the teller had given the robber $2,380.00 in US currency.

**E. INVESTIGATION**

Following the aforementioned robberies, law enforcement officers retrieved and then compared surveillance photographs from the banks and various witnesses' statements.  Law enforcement officers noted that the physical description of the robber was consistent in each of the robberies.  Additionally, the manner in which the robber committed each robbery was consistent.  In some of the robberies, the robber donned a pair

4

of sunglasses and had a hat or hood covering his head.  In each of the robberies, the robber passed a demand note to the teller.  In three of the four robberies, the word "robbery" was incorrectly spelled.  Based upon their review, law enforcement opined that the same individual was responsible for these robberies.

On November 17, 2016, the FBI prepared and published a wanted bulletin detailing these robberies (the "bulletin"). This bulletin contained the dates of the robberies, copies of the various banks' surveillance photographs, and a contact number for the FBI.  This bulletin was posted on the FBI's website and provided to local media outlets.

On November 23, 2016, the FBI was notified that an investigator (the "investigator") at the Nashua Street Jail had monitored a phone call between an inmate, Englen, and his mother, Theresa Englen.  Englen was arrested on November 18, 2016 for an unrelated state probation violation.  On this phone call, the investigator heard Theresa Englen state, in substance, that she had been shown a copy of a surveillance photo from a recent bank robbery (TD Bank - November 5, 2016).  Theresa Englen stated that she knew that he, Englen, was the person depicted in the bank's surveillance photo.  The investigator recalled that Englen stated, in substance, that he did not want

5

to talk about this matter.  This information was relayed to the FBI SA ("the SA") who was in charge of the investigation.

Upon receiving this information, the SA obtained a recent booking photograph of Englen and compared it to the likeness of the individual involved in the aforementioned robberies.  In the SA's opinion, Englen was the individual in the surveillance photographs who robbed the four banks.  The SA also learned that Englen was on probation at that time for armed robbery.

Englen was subsequently identified and charged in Federal Court with these robberies.

### III. <u>GUIDELINE ANALYSIS</u>

#### A. <u>Offense Level Computation</u>

**1. Offense Level Calculation**

**PSR ¶ 59 Base Offense Level:**

The Government agrees with Probation's conclusion that Englen's Adjusted Offense Level for each count of the Indictment is 22.

**¶ 59 through ¶ 62 Specific Offense Characteristics:**

The Government agrees with Probation's conclusion that, since Englen is responsible for the robbery of four banks, a multiple count adjustment of 4 units should be added to Englen's Adjusted Offense Level, resulting in a combined Adjusted Offense Level of 26.

2. **¶ 64 & 65 Acceptance of Responsibility:**

The Government agrees with Probation's conclusion that Englen is entitled to a three-level reduction for acceptance of responsibility.

3. **¶ 66 Total Offense Level:**

The Government agrees with Probation's conclusion that the Total Offense Level is 23.

B. <u>**Defendant's Criminal History**</u>

As outlined in the PSR, Englen has an extensive record resulting in 25 criminal history points that include convictions for:

1. **Criminal Convictions:**

    a. ¶ 69 **Assault and Battery** – 1/14/2005 (Age 22); Violation of Probation – 5/23/2005, 90 days' imprisonment;

    b. ¶ 70 **Attempt to Commit Crime, Possession of Burglarious Instruments, Breaking and Entering Building, Nighttime for Felony Purpose** – 6/29/2005, probation and fine imposed; Violation of Probation – 1/25/2006, 6 months HOC;

    c. ¶ 71 **Larceny Over $250, Make Burglarious Instrument, Trespass, Failure to Stop for Police** – 1/25/2006, 18 months HOC, 6 months cmtd, balance suspended to

1/23/2008, concurrent; Violation of Probation – 5/24/2007, 1 year HOC;

d. ¶ 72 **Larceny Over $250, Malicious Destruction of Property More Than $250, Trespass, Receipt of Stolen Property More Than $250** – 8/23/2007, 15 months HOC concurrent;

e. ¶ 73 **Malicious Destruction of Property More Than $250, Larceny Over $250, Trespass** – 6/29/2009, 18 months HOC, sentence suspended with probation to 6/29/2011, fine; Violation of Probation – 11/24/2009, 18 months;

f. ¶ 74 **Larceny Over $250** – 1/6/2010, 4 months HOC on and after sentence concurrently serving;

g. ¶ 75 **Receipt of Stolen Property More Than $250, Trespass, Malicious Destruction of Property More Than $250** – 11/2/2009, 18 months HOC;

h. ¶ 76 **Armed Robbery, Unarmed Robbery** – 5/17/2013, MCI Cedar Junction 3 years to 3 years and 1 day, 4 years' probation; Violation of Probation –4/21/2016, 5 years to 5 years and 1 day;

i. ¶ 77 **Armed Robbery (Firearm), Assault with a Dangerous Weapon** – 6/4/2013, MCI Cedar Junction 3 to 4 years concurrent, 2 years' probation; Violation of Probation – 4/21/17, sentence revoked, 5 years to 5 years and 1 day;

8

j. ¶ 78 **Unarmed Robbery** – 5/17/2013, 4 years' probation

k. ¶ 79 **Possession of Class B Drug** (Suboxone) – 3/30/2017, 1 year; and

l. ¶ 80 **Armed Robbery** – 7/26/2017, MCI Cedar Junction 3 years to 3 years and 1 day.

2. **81-82 Criminal History Computation**

The Government agrees with Probation's conclusion that the criminal convictions above result in a criminal history score of 25. According to the sentencing table in U.S.S.G Chapter 5, Part A, his criminal history category is VI.

3. **120 Guideline Provisions:**

The Government agrees with Probation's conclusion that based upon a Total Offense Level of 23 and a criminal history category of VI, the guideline imprisonment range is 92 months to 115 months.

IV. <u>**SENTENCING RECOMMENDATION**</u>

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence.  These factors include:  1) the nature and circumstances of the offense and the history and characteristics of the defendant, and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public

from further crimes of the defendant, and to provide for the needs of the defendant.

For the reasons detailed below, the Government believes that a sentence of 100 months' imprisonment, the mid-range of the guidelines, is fair, just, and takes into account the factors enumerated in 18 U.S.C. § 3553(a).

Englen is a life-long violent criminal with an extensive criminal history of convictions and violations of probation. Since 2004, Englen has been sentenced to prison 12 times. These sentences range in duration from 60 days' imprisonment to five years' imprisonment. In most of these cases, Englen was also found to be in violation of his probation.

Englen has specifically been convicted of armed robbery on five separate occasions. Three of these convictions were for bank robbery (¶ 76 - 4 banks and ¶ 80 - 1 bank). The other armed robberies occurred at a convenience store and a pizza restaurant respectively. All of these acts were committed violently.

The seriousness of robbery, whether bank or otherwise, can hardly be understated, as it greatly affects the lives of the victims.

While there is little to no doubt that Englen has endured a challenging life involving drug dependencies issues, it is evident he has refused to learn from his mistakes. Englen has

faced numerous periods of imprisonment where he was given opportunities to receive state-sponsored drug treatment, educational enhancement, and job training. Despite such, Englen reverted to criminal behavior. In short, Englen's criminal record clearly demonstrates his inability and unwillingness to adjust his lifestyle and conform his behavior to acceptable societal norms.

The government's recommendation, while quite severe, will allow Englen to gain access to multiple educational programs, job-training programs, and necessary drug treatment programs. Coupled with a significant sentence, these factors will hopefully serve as the deterrent Englen needs to stop his return to criminal behavior post imprisonment.

## V. **CONCLUSION**

For the reasons stated herein, the Government requests this Court impose a sentence of 100 months' imprisonment. Following the completion of this sentence, the Government requests that Englen be placed on supervised release for a period of 36 months, pay restitution in the amount of $6,346.00, and pay a mandatory special assessment of $400.

This is a just and appropriate sentence as dictated by the circumstances of this case and Englen's criminal history.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: **/s/ Kenneth G. Shine**
KENNETH G. SHINE
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

This is to certify that I have this date served a copy of the foregoing upon defendant's counsel of record by electronic filing notice.

**/s/ Kenneth G. Shine**
KENNETH G. SHINE
Assistant U.S. Attorney